IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION


FILED
CHARLOTTE, NC

OCT 2 5 2012

U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| UNITED STATES OF AMERICA and MECKLENBURG COUNTY, <br><br> Plaintiffs, <br><br> v. <br><br> EMERALD CAROLINA CHEMICAL, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 3:12-cv-00554

<u>CONSENT DECREE</u>

# TABLE OF CONTENTS

I.   JURISDICTION AND VENUE ................................................................... -4-

II.  APPLICABILITY ................................................................................... -5-

III. DEFINITIONS ....................................................................................... -6-

IV.  CIVIL PENALTY ................................................................................ -10-

V.   COMPLIANCE REQUIREMENTS ....................................................... -11-

VI.  REPORTING REQUIREMENTS ......................................................... -19-

VII. STIPULATED PENALTIES .................................................................. -22-

VIII. FORCE MAJEURE ............................................................................. -26-

IX.  DISPUTE RESOLUTION ..................................................................... -28-

X.   INFORMATION COLLECTION AND RETENTION .............................. -31-

XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................... -33-

XII. COSTS ................................................................................................ -35-

XIII. NOTICES ........................................................................................... -35-

XIV. EFFECTIVE DATE ............................................................................. -37-

XV.  RETENTION OF JURISDICTION ....................................................... -37-

XVI. MODIFICATION ................................................................................ -38-

XVII. TERMINATION ................................................................................ -38-

XVIII. PUBLIC PARTICIPATION .............................................................. -39-

XIX. SIGNATORIES/SERVICE .................................................................. -39-

XX.  INTEGRATION .................................................................................. -40-

XXI. FINAL JUDGMENT ........................................................................... -40-

# CONSENT DECREE

WHEREAS Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Mecklenburg County (the "County"), on behalf of its Land Use & Environmental Services Agency ("LUESA"), have filed a Complaint in this action concurrently with this Consent Decree against Defendant Emerald Carolina Chemical, LLC ("Defendant" or "Emerald");

WHEREAS Defendant owns and operates a chemical processing plant (the "Facility") located at 8309 Wilkinson Boulevard in Charlotte, Mecklenburg County, North Carolina;

WHEREAS the Facility includes a glyoxal process unit, which is currently decommissioned and inoperative, and an amino resins unit;

WHEREAS, while Defendant does not currently intend to recommission the glyoxal process unit in the future, it is possible that Defendant could recommission the unit;

WHEREAS the Complaint alleges that Defendant violated Section 112 of the Clean Air Act ("Act"), 42 U.S.C. § 7412, and the implementing regulations found at 40 C.F.R. Part 63, Subpart F (National Emission Standards for Organic Hazardous Air Pollutants From the Synthetic Organic Chemical Manufacturing Industry); 40 C.F.R. Part 63, Subpart H (National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks); 40 C.F.R. Part 63, Subpart OOO (National Emission Standards for Organic Hazardous Air Pollutant Emissions: Manufacture of Amino/Phenolic Resins); and 40 C.F.R. Part 63, Subpart UU (National Emission Standards for Equipment Leaks–Control Level 2 Standards) at the Facility;

WHEREAS the Complaint further alleges that Defendant failed to comply with certain regulations governing Leak Detection and Repair ("LDAR") requirements applicable to the Facility's glyoxal process and amino resins units and, as a result, Defendant failed to comply with its operating permit issued pursuant to Title V of the Act, 42 U.S.C. §§ 7661-7661f, in violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a);

WHEREAS the Complaint also alleges that Defendant and the Facility are subject to the Mecklenburg County Air Pollution Control Ordinance ("MCAPCO") and that Defendant violated MCAPCO Regulation 2.1111 - "Maximum Achievable Control Technology";

WHEREAS Defendant does not admit any liability to the United States or to the County arising out of the transactions or occurrences alleged in the Complaint; and

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 113(b) and 304(a) of the Act, 42 U.S.C. §§ 7413(b) and 7604(a), and over the Parties. This Court has supplemental jurisdiction over the claims asserted by the County pursuant to 28 U.S.C. § 1367. Venue lies in this District pursuant

-4-

to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a),

because Defendant resides in this judicial district and because the violations alleged in the

Complaint are alleged to have occurred in and to continue to occur in Defendant's Facility located

in this judicial district. For purposes of this Decree, or any action to enforce this Decree,

Defendant consents to the Court's jurisdiction over this Decree and any such action and over

Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint

states claims upon which relief may be granted pursuant to Sections 112 and 502(a) of the Act, 42

U.S.C. §§ 7412 and 7661a(a), and MCAPCO Regulation 2.1111.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the

United States and the County, and upon Defendant and any successors, assigns, or other entities or

persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in

compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its

obligation to ensure that the terms of the Decree are implemented, unless (1) the transferee agrees

in writing to undertake the obligations required by this Decree and to be substituted for Defendant

as a Party under the Decree and thus be bound by the terms thereof, and (2) the United States,

after consultation with the County and after receiving information sufficient to demonstrate that

the transferee has the technical abilities and financial means to comply with the obligations of this

Decree, consents to relieve Defendant of its obligations. The United States may refuse to approve

the substitution of the transferee for Defendant if it determines, after consultation with the County,

that the proposed transferee does not possess the requisite technical abilities or financial means to fulfill the obligations required by this Decree. The United States' decision to refuse to approve the substitution of the transferee for the Defendant shall not be subject to judicial review. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee. At least 30 Days prior to such transfer or, if 30 Days' notice is not possible, at least 14 Days prior to such transfer, Defendant shall provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States and the County, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in federal and state regulations promulgated pursuant to the Act shall have the meanings assigned to them in

the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "AVO Monitoring" shall mean monitoring for evidence of a potential leak to the atmosphere using an audible, visual, olfactory, or any other detection method;

b. "Complaint" shall mean the complaint filed by the United States and the County in this action;

c. "Consent Decree" or "Decree" shall mean this Consent Decree;

d. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

e. "Defendant" shall mean Emerald Carolina Chemical, LLC;

f. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

g. "Effective Date" shall have the definition provided in Section XIV;

h. "Equipment" means each pump, compressor, agitator, pressure relief device, sampling connection system, open-ended valve or line, valve, connector, surge control vessel, bottoms receiver, and instrumentation system in organic hazardous air pollutant service; and any control devices or systems required by 40 C.F.R. Part 63, Subpart H (National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks);

i.      "Facility" shall mean the chemical processing plant located at 8309 Wilkinson Boulevard in Charlotte, Mecklenburg County, North Carolina;

j.      "Glyoxal Unit" shall mean the glyoxal process unit located on the Facility;

k.      "In gas/vapor service" means that a piece of Equipment in organic hazardous air pollutant service contains a gas or vapor at operating conditions;

l.      "In heavy liquid service" means that a piece of Equipment in organic hazardous air pollutant service is not in gas/vapor service or in light liquid service;

m.      "In light liquid service" means that a piece of Equipment in organic hazardous air pollutant service contains a liquid that meets the following conditions:

(1) The vapor pressure of one or more of the organic compounds is greater than 0.3 kilopascals at 20 °C,

(2) The total concentration of the pure organic components having a vapor pressure greater than 0.3 kilopascals at 20 °C is equal to or greater than 20 percent by weight of the total process stream, and

(3) The fluid is a liquid at operating conditions;

n.      "LDAR" or "Leak Detection and Repair" shall mean the applicable leak detection and repair activities required by any "equipment leak" provisions of 40 C.F.R. Parts 61 or 63. "LDAR" or "Leak Detection and Repair" also shall mean any applicable and comparable state or local equipment leak provisions;

o. "LDAR Personnel" shall mean all employees and contractors of Defendant that are assigned to implementing or overseeing the LDAR functions at the Facility;

p. "LUESA" shall mean the Mecklenburg County Land Use & Environmental Services Agency and any of its successor departments or agencies;

q. "Method 21" shall mean the test method found at 40 C.F.R. Part 60, Appendix A, Method 21;

r. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

s. "Parties" shall mean the United States, the County, and Defendant;

t. "Title V Permit" shall mean the federally enforceable permit issued to Defendant by LUESA pursuant to Title V of the Act, which is numbered 10-02V-595 as of the date of lodging of this Consent Decree;

u. "Screening Value" shall mean the highest emission level that is recorded at each piece of Equipment as it is monitored in compliance with Method 21;

v. "Section" shall mean a portion of this Decree identified by a Roman numeral;

w. "County" shall mean Mecklenburg County of the State of North Carolina; and

x. "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8.      Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay to the United States the sum of $62,500 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court through the date of entry of the Decree, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.      Defendant shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of North Carolina, 227 W. Trade Street, Suite 1650, Charlotte, North Carolina 28202, (704) 344-6222. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America and Mecklenburg County v. Emerald Carolina Chemical, LLC*, and shall reference the civil action number and DOJ case number 90-5-2-1-09526, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal, state, or local income tax.

11.  Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay to the County the sum of $62,500 as a civil penalty.

12.  Defendant shall pay the civil penalty due to the County by sending a certified check made payable to "Mecklenburg County Air Quality" to Robert S. Adden, Jr., Ruff Bond Cobb Wade & Bethune, LLP, Attorneys for Mecklenburg County, 831 E. Morehead Street, Suite 860, Charlotte, North Carolina 28202, or as otherwise directed by said counsel for the County.

## V. COMPLIANCE REQUIREMENTS

A.  General Compliance

13.  This Consent Decree shall not affect Defendant's obligations to comply with applicable provisions of 40 C.F.R. Part 63, Subparts F, H, OOO, and UU; its Title V Permit; and Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f.

B.  Enhancements to LDAR Requirements

14.  The requirements set forth in this Section V.B are enhancements to the LDAR requirements to which Defendant is subject. These enhancements are in addition to, and not in lieu of, the requirements of any other LDAR regulation that may be applicable to a piece of Equipment. If there is a conflict between any LDAR regulation and the requirements of this Section V.B, Defendant shall follow the more stringent of the requirements.

15.  *Facility-wide LDAR Plan and Standard Operating Procedures*. Within 90 Days after the Effective Date of the Consent Decree, Defendant will submit to EPA and LUESA for review and comment by EPA, after consultation with LUESA, a Facility-wide document or compilation of documents that generally describes:

a. Defendant's Facility-wide LDAR program (including the applicability of LDAR regulations to process units and specific Equipment, leak definitions, and monitoring frequencies);

b. Defendant's tracking program (e.g., Management of Change) that ensures that new pieces of Equipment added to the Facility for any reason are integrated into the LDAR program and pieces of Equipment that are taken out of service are removed from the LDAR program; and

c. The roles and responsibilities of all LDAR Personnel.

The Facility-wide document(s) shall also include the following requirements:

d. In a specific section on sampling, the document(s) shall require:

i. Strict compliance by LDAR Personnel with Method 21 for Equipment subject to Method 21 monitoring requirements;

ii. Strict compliance by LDAR Personnel with the heat exchanger sampling requirements codified at 40 C.F.R. § 63.104(b);

iii. Procedures for LDAR Personnel to notify an appropriate manager or employee of the Facility of any deficiency in complying with LDAR regulations on the Day the deficiency occurs or, if not discovered until after the deficiency occurs, the Day the deficiency is discovered;

iv. Procedures to follow up on any deficiency referred to in the preceding sub-Paragraph 15.d.iii to ensure that any deficiency

resulting in noncompliance is corrected in a timely manner, including scheduling a subsequent visit and resampling if necessary.

e.    In a specific section on maintenance and work orders, the document(s) shall require seals on connectors in gas/vapor service and in light liquid service that have been broken to be remonitored within 3 months after returning to organic HAP service. The seal must be remonitored if it is broken under any circumstance, including during maintenance activities.

f.    In a specific section on monitoring, the document(s) shall require LDAR Personnel to confirm with the appropriate manager or employee at the Facility, prior to monitoring, that lines/components in the unit to be monitored will not be in vacuum service during monitoring.

16.    *Facility-wide Leak Detection Form.* Within 90 Days after the Effective Date of the Consent Decree, Defendant shall submit to EPA and LUESA for review and comment by EPA, after consultation with LUESA, the form used by LDAR Personnel to record detected leaks that includes:

a.    a training self-certification section where the specific LDAR Personnel who is completing the form shall self-certify that he or she is properly trained in recording or repairing leaks in accordance with LDAR regulations; and

b.    the following details relevant to assessing compliance with LDAR regulations:

i.    Date and time of leak detection;

ii.     Method of leak detection, including records of the

Screening Values if Method 21 is used and descriptions of evidence of

a potential leak if AVO Monitoring is used;

iii.     Dates and times of all repair attempts;

iv.     Descriptions of the repair methods used during each repair

attempt, including records of the Screening Values if Method 21 is

used;

v.     Description of how the repair was confirmed to be

successful.

C.     Amino Resins Unit Process Hazard Analysis

17.     Within 90 Days after the Effective Date of this Consent Decree, Defendant

will submit to EPA for review and comment by EPA, after consultation with LUESA, a process

hazard analysis ("PHA") evaluating the hazards and risks present in the amino resins unit and its

processes based on the regulated HAP substances utilized or produced and the unit's processes

and procedures. This includes, but is not limited to, the location, identification, and

characterization of potential sources of significant leaks and potential sources posing an

explosive risk. The PHA shall also include a probability analysis for the likelihood of individual

accidents; methods and safeguards to be used or needed to minimize and/or control the hazards

or prevent equipment malfunction or human error; and steps needed or used to detect or monitor

releases. It also shall, through risk analysis, identify any Equipment that is unsafe to monitor or

would be unsafe to repair. If Defendant determines that the cause of the unsafe-to-monitor or

unsafe-to-repair situation constitutes a potential violation of its general duty under Section 112(r)

of the Clean Air Act, 42 U.S.C. § 7412(r), then Defendant must remedy the situation or include in the PHA a schedule and plan for remedying the situation. The PHA must also include an analysis of the compatibility of methanol with the material being used in the construction of the methanol storage tank and methods to be used to contain an unintended release of methanol. In its submittal to EPA, Defendant shall also describe how the recommendations in the PHA are being addressed and, if applicable, a schedule for implementing the recommendations.

D.    Requirements Applicable to the Glyoxal Unit

18.    Defendant consents to LUESA's incorporation of the requirements of Paragraphs 19 through 22 into Defendant's Title V Permit to ensure that the requirements of Paragraphs 19 through 22 survive the termination of this Consent Decree and will remain in effect for so long as Defendant is required to obtain or have a permit pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f, for the Facility. No later than 90 Days after the Effective Date of this Consent Decree, LUESA shall incorporate, through administrative modification of the Title V Permit, the requirements referred to in the preceding sentence. Defendant may not invoke dispute resolution under Section IX of this Decree in connection with LUESA's administrative modification of the Title V Permit to incorporate such provisions.

19.    *Process Hazard Analysis.* At least 120 Days prior to any recommissioning of the Glyoxal Unit, Defendant will submit to EPA for review and comment by EPA, after consultation with LUESA, a PHA evaluating the hazards and risks present in the Glyoxal Unit based on the regulated HAP substances utilized or produced and the unit's processes and procedures. This includes, but is not limited to, the location, identification and characterization of potential sources of significant leaks and potential sources posing an explosive risk. The PHA

shall also include a probability analysis for the likelihood of individual accidents; methods and safeguards to be used or needed to minimize and/or control the hazards or prevent equipment malfunction or human error; and steps needed or used to detect or monitor releases. It also shall, through risk analysis, identify any Equipment that is unsafe to monitor or would be unsafe to repair. If Defendant determines that the cause of the unsafe-to-monitor or unsafe-to-repair situation constitutes a potential violation of its general duty under Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), then Defendant must remedy the situation or include in the PHA a schedule and plan for remedying the situation. In its submittal to EPA, Defendant shall also describe how the recommendations in the PHA are being addressed and, if applicable, a schedule for implementing the recommendations.

20. *"In Heavy Liquid Service" Designation.* If Defendant seeks to recommission the Glyoxal Unit and to treat one or more pieces of Equipment in the Glyoxal Unit as being "in heavy liquid service," Defendant shall submit a request, at least 120 Days prior to any recommissioning of the Glyoxal Unit, to EPA and LUESA for approval by EPA, after consultation with LUESA, for the glyoxal solution that will be used in the Glyoxal Unit to be classified as "in heavy liquid service." At a minimum, Defendant's request shall: (a) include the results of a test of a representative sample of the glyoxal solution; (b) demonstrate that the glyoxal solution will not be "in light liquid service" under the standard set forth at 40 C.F.R. § 60.485(e)(1), as referenced in 40 C.F.R. § 63.161; and (c) for purposes of the test, use a direct measurement of vapor pressure. Such request is not subject to Section V.E. ("Review and Comment on Deliverables"). If and to the extent that Defendant seeks to restart the Glyoxal Unit prior to a final determination of whether the glyoxal solution is "in light liquid service" or "in

heavy liquid service," Defendant shall deem all Equipment in the Glyoxal Unit as being "in light liquid service" and shall comply with all LDAR provisions applicable to Equipment that is "in light liquid service."

21.    *Enhanced Monitoring.*  If Defendant recommissions the Glyoxal Unit, Defendant shall, from all platforms including high platforms, monitor monthly for indications of any leak of formaldehyde from the Glyoxal Unit's formaldehyde concentrator using Method 21 for each piece of Equipment and using AVO Monitoring otherwise.  When using AVO Monitoring, Defendant shall pay particular attention to any audio, visual, olfactory, or other evidence of a potential leak regardless of whether such leak appears to emanate from a piece of Equipment or from elsewhere on the formaldehyde concentrator.  Each monthly monitoring event shall be recorded in a manner consistent with Defendant's routine LDAR monitoring of Equipment on the Glyoxal Unit.

22.    *Formaldehyde Leaks.*  If Defendant recommissions the Glyoxal Unit, Defendant shall repair any leak of formaldehyde detected from the Glyoxal Unit's formaldehyde concentrator as follows:

a.    For any repair of a formaldehyde leak detected from the Glyoxal Unit's formaldehyde concentrator that requires a process unit shutdown, Defendant shall shut down the process unit in the most immediate and safest manner possible to expedite the repair, not to exceed 15 Days after the date of leak detection.  Due to the potential impact of formaldehyde exposure to human health and the environment, Defendant shall not place any piece of Equipment that is leaking formaldehyde on the delay of repair list.

      b.     Due to the potential impact of formaldehyde exposure to human health and the environment, for any repair of a formaldehyde leak detected from the Glyoxal Unit's formaldehyde concentrator that does not require a process unit shutdown, Defendant shall repair such leak immediately and shall not place any piece of Equipment that is leaking formaldehyde on the delay of repair list.

E.      <u>Review and Comment on Deliverables</u>

23.     Defendant shall submit any plan, report, or other item that it is required to submit for review and comment pursuant to this Consent Decree to EPA and to LUESA. If EPA, after consultation with LUESA, notifies Defendant in writing of any deficiency in the submission and describes such deficiency, Defendant shall either: (i) correct such deficiency and submit a revised deliverable to EPA and LUESA within 14 Days after the date of notification by EPA, or (ii) submit the matter for dispute resolution under Section IX of this Decree. Upon receipt of final comments on the submission, or upon completion of the submission pursuant to dispute resolution, Defendant shall implement the submission as appropriate.

24.     If any submission is so deficient as to, in EPA's view after consultation with LUESA, constitute a material breach of Defendant's obligations under this Decree, EPA shall so notify Defendant in writing after receipt of the submission and describe the deficiency. Within 14 Days after receipt of EPA's notification, Defendant shall revise and resubmit the deliverable. Stipulated penalties of $500 to each Plaintiff per Day shall begin to accrue on the date of EPA's notification to Defendant and shall continue to accrue until the date of submission of a revised deliverable that, in EPA's view after consultation with LUESA, no longer constitutes a material breach of Defendant's obligations under this Decree. Any such revised deliverable

-18-

shall be reviewed as described in the preceding Paragraph. However, stipulated penalties under this Paragraph 24 shall be due and payable notwithstanding any subsequent resubmission, subject to Defendant's right to invoke dispute resolution. Paragraphs 38 through 43 apply to any stipulated penalties provided for in this Paragraph 24.

VI. <u>REPORTING REQUIREMENTS</u>

25. <u>Compliance Status Reports</u>. On the dates and for the time periods set forth in Paragraph 28 (Due Dates), Defendant shall submit to EPA and LUESA, in the manner set forth in Section XIII (Notices), the following information:

      a.      An identification and description of any noncompliance with, or problems in implementing, the Facility-wide requirements and procedures described in Paragraph 15 (Facility-wide LDAR Plan and Standard Operating Procedures) and the accurate completion of the form described in Paragraph 16 (Facility-wide Leak Detection Form);

      b.      A description of implemented or to-be-implemented actions that resolved the noncompliance or problems described in Paragraph 25(a); and

      c.      If the Glyoxal Unit is recommissioned during the life of this Consent Decree, an identification and description of any noncompliance with the requirements of Paragraphs 21 (Enhanced Monitoring) and 22 (Formaldehyde Leaks).

26. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify EPA and LUESA of such violation and its likely duration, in writing, within 10 business Days of the Day Defendant first becomes

aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

27. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the operation of the Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and LUESA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

28. Due Dates. The first compliance status report under this Section VI shall be due 120 Days after the Effective Date of this Consent Decree. The initial report shall cover the period between the Effective Date and the date of the report. Until termination of this Decree, each subsequent report will be due on the same date in the following year and shall cover the prior year.

29. All reports under this Consent Decree shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

30.     Each report submitted by Defendant under this Section shall be signed by the Facility manager, an Emerald official responsible for environmental management and compliance, or an Emerald official responsible for plant engineering management, and shall include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the United States and the County in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. STIPULATED PENALTIES

33.     Defendant shall be liable for stipulated penalties to the United States and the County for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

34.     Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty, to the Plaintiff to whom the penalty is due, of $1,000 per Day for each Day that the payment is late.

35.     Failure to Meet Compliance Requirements

The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of Section V of this Consent Decree, and shall be due to the United States and the County, as specified in Table 1 below:

TABLE 1

| Violation | Stipulated Penalty | |
|---|---|---|
| 35.a.  Failure to timely submit Facility-wide document(s) in accordance with the requirements of Paragraph 15 or Facility-wide form in accordance with requirements of Paragraph 16 | Period of Noncompliance<br>1st through 15th Day<br>16th through 30th Day<br>31st Day and beyond | Penalty Per Violation Per Day<br>$100 to each Plaintiff<br>$175 to each Plaintiff<br>$275 to each Plaintiff |
| 35.b.  Failure to timely submit amino resins unit PHA in accordance with the requirements of Paragraph 17 | Period of Noncompliance<br>1st through 15th Day<br>16th through 30th Day<br>31st Day and beyond | Penalty Per Violation Per Day<br>$100 to each Plaintiff<br>$175 to each Plaintiff<br>$275 to each Plaintiff |

| 35.c. Failure to timely submit Glyoxal Unit PHA in accordance with the requirements of Paragraph 19 | Period of Noncompliance 1st through 15th Day 16th through 30th Day 31st Day and beyond | Penalty Per Violation Per Day $100 to each Plaintiff $175 to each Plaintiff $275 to each Plaintiff |
|---|---|---|
| 35.d. Failure to comply with the requirements relating to Equipment "in light liquid service" in the Glyoxal Unit prior to a determination on whether the Equipment is "in heavy liquid service," in violation of Paragraph 20 | $2,500 to each Plaintiff per Day beginning on the date of any recommissioning of the Glyoxal Unit | |
| 35.e. Each failure to monitor any piece of Equipment in the formaldehyde concentrator monthly for formaldehyde leaks, in violation of Paragraph 21 | $500 to each Plaintiff per LDAR component per missed month of monitoring, not to exceed $10,000 per month per Plaintiff | |
| 35.f. Each failure to record a monthly monitoring event in the formaldehyde concentrator, in violation of Paragraph 21 | $50 to each Plaintiff for each failure to record a reading, not to exceed $10,000 per month per Plaintiff | |
| 35.g. Each failure to repair a formaldehyde leak within 15 Days after date of detection, in violation of Paragraph 22 | $500 to each Plaintiff per component per Day of violation | |
| 35.h. Each failure to comply with any recording, recordkeeping, or reporting requirements in Section V not specifically identified above in this Table | Period of Noncompliance 1st through 15th Day 16th through 30th Day 31st Day and beyond | Penalty Per Violation Per Day $50 to each Plaintiff $125 to each Plaintiff $250 to each Plaintiff |

36.    Failure to Meet Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of Section VI of this Consent Decree, and shall be due to the United States and the County, as specified in Table 2 below:

TABLE 2

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 15th Day<br>16th through 30th Day<br>31st Day and beyond | $50 to each Plaintiff<br>$100 to each Plaintiff<br>$150 to each Plaintiff |

37.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38.     Where any stipulated penalty is due to a Plaintiff, Defendant shall pay any stipulated penalty within 30 Days of receiving the Plaintiff's written demand.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

39.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

40.     Stipulated penalties shall continue to accrue as provided in Paragraph 37, during any dispute resolution, but need not be paid until the following:

   a.     If the dispute is resolved by agreement or by a decision of EPA, after consultation with LUESA, that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the County within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States or the County prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

41.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendant shall pay stipulated penalties owing to the County in the manner set forth and with the confirmation notices required by Paragraph 12.

42.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the County from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

43.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States and the County for Defendant's violation of this Consent Decree or applicable law. Where a

-25-

violation of this Consent Decree is also a violation of the Clean Air Act and its implementing regulations, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII. FORCE MAJEURE

44.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event: (a) as it is occurring; and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

45.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA and LUESA, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA and LUESA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

46. If EPA, after consultation with LUESA, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by LUESA, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

47. If EPA, after consultation with LUESA, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of the decision.

48. If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution) to contest EPA's decision that the delay was not caused by a force majeure event, it shall do so no later than 15 Days after receipt of EPA's notice. In any

such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the

evidence that the delay or anticipated delay has been or will be caused by a force majeure event,

that the duration of the delay or the extension sought was or will be warranted under the

circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Defendant complied with the requirements of Paragraphs 44 and 45, above.  If Defendant

carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the

affected obligation of this Consent Decree identified to EPA, LUESA, and the Court.

## IX.  DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the

dispute resolution procedures of this Section shall be the exclusive mechanism to resolve

disputes arising under or with respect to this Consent Decree. Defendant's failure to seek

resolution of a dispute under this Section shall preclude Defendant from raising any such issue as

a defense to an action by the United States or the County to enforce any obligation of Defendant

arising under this Decree.

50.     Informal Dispute Resolution.  Any dispute subject to dispute resolution

under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when one Party sends the other Parties a written Notice of Dispute.

Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotia-

tions shall not exceed 20 Days from the date the dispute arises, unless that period is modified by

written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the

position advanced by the United States (after consultation with the County) shall be considered

binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

51.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the County a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

52.     The United States (after consultation with the County) shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with Paragraph 54.

53.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to Paragraphs 51 and 52.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

54.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the County, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be

filed within 10 Days of receipt of the United States' Statement of Position pursuant to Paragraph 52. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

55.     The United States (after consultation with the County) shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

56.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 51 pertaining to the adequacy or appropriateness of submissions and procedures to implement any items requiring approval by EPA under this Consent Decree; the adequacy of the performance of injunctive relief undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States and/or the County is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 51, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

57. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 40. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

58. The United States, the County, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility, at all reasonable times, upon presentation of credentials, to:

    a. monitor the progress of activities required under this Consent Decree;

    b. verify any data or information submitted to the United States or the County in accordance with the terms of this Consent Decree;

    c. obtain documentary evidence, including photographs and similar data; and

    d. assess Defendant's compliance with this Consent Decree.

59. Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or

its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the County, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

60. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the County at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the County, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

61. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.

As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

62.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the County pursuant to applicable federal, state, or local laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

63.     This Consent Decree resolves the civil claims of the United States and the County for the violations alleged in the Complaint filed in this action through the date of lodging.

64.     The United States and the County reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in the preceding Paragraph. This Consent Decree shall not be construed to limit the rights of the United States or the County to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal, state, or local laws, regulations, or permit conditions, except as expressly specified in the preceding Paragraph. Except as specifically set forth herein, Defendant reserves all rights with respect to any such proceedings. The United States and the County further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

65.     In any subsequent administrative or judicial proceeding initiated by the United States or the County for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the County in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 63 of this Section.

66.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the County do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

67.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the County against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

68. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

69. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the County shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII. NOTICES

70. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as set forth below. Where both physical and electronic addresses are listed, Defendant shall submit such notifications, submissions, and communications to both addresses.

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-09526

Ellen Rouch
Associate Regional Counsel
Office of Environmental Accountability
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
rouch.ellen@epa.gov

Kevin Taylor
Air Enforcement & EPCRA Division
Air, Pesticides and Toxics Management Division
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
taylor.kevin@epa.gov

To EPA:

Ellen Rouch
Associate Regional Counsel
Office of Environmental Accountability
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
rouch.ellen@epa.gov

Kevin Taylor
Air Enforcement & EPCRA Division
Air, Pesticides and Toxics Management Division
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
taylor.kevin@epa.gov

To the County or to LUESA:

Don R. Willard
Director of Mecklenburg County Air Quality
700 North Tryon Street
Charlotte, North Carolina 28202
Don.Willard@MecklenburgCountyNC.gov

To Defendant:

Brenda Abke
Emerald Performance Materials, LLC
2020 Front Street, Suite 100
Cuyahoga Falls, Ohio 44221
brenda.abke@emeraldmaterials.com

David Gessner
Emerald Carolina Chemical, LLC

8309 Wilkinson Boulevard
Charlotte, North Carolina 28214
david.gessner@emeraldmaterials.com

Sloane Anders Wildman
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, D.C. 20005
swildman@perkinscoie.com

71. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

72. Notices submitted pursuant to this Section shall be deemed submitted upon physical or electronic mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

73. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION

74. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

75.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

76.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 56, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

77.     No sooner than 18 months after the Effective Date of this Consent Decree, this Decree may be terminated when the United States determines after consultation with the County that Defendant has satisfactorily completed performance of the requirements of Section V (Compliance Requirements) of this Decree, provided that Defendant has fulfilled all other obligations of this Decree, including payment of the civil penalty under Section IV of this Decree and any outstanding stipulated penalties under Section VII of this Decree. The Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Consent Decree have been met and requesting termination of the Decree.

78.     Notwithstanding the termination of the Decree, requirements incorporated into Defendant's Title V Permit pursuant to the Decree shall remain in the Title V Permit pursuant to Paragraph 18.

## XVIII.  PUBLIC PARTICIPATION

79.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

80.     Each undersigned representative of Defendant, the County, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.1

81.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

---

1       Due to the limits of electronic filing, the original signatures of the representatives contained on the Proposed Consent Decree (#2-1), and the pages on which such signatures appear, are incorporated herein by reference.

## XX. INTEGRATION

82.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI. FINAL JUDGMENT

83.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the County, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this 22nd day of October , 2012.

_MAX O. COGBURN, JR._
UNITED STATES DISTRICT JUDGE
Western District of North Carolina